UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


WILLIE DEBARDELABEN,

    Plaintiff,

v.                                                        Case No. 2:11-cv-439
                                                          HON. R. ALLAN EDGAR
RICHARD M. MCKEON, et al.,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Willie Debardelaben filed this prisoner civil rights action. Trial is scheduled for April 8, 2014. The remaining claims are against Defendants Heidi Swajanen and Cherie Konrad for alleged retaliatory and religious First Amendment violations. Defendants filed a motion for judgment on the pleadings and/or a motion in limine claiming that Plaintiff's First Amendment free exercise claim should be dismissed, because the law regarding the Michigan Department of Corrections' "zero-tolerance" policy, which provided that inmates can be taken off a Kosher meal diet if they are found with non-Kosher food items, was not ruled unconstitutional until after Plaintiff was removed from his Kosher diet. Defendants argue that they are entitled to qualified immunity on the First Amendment free exercise claim. Plaintiff argues that because his claims involving retaliation and the impairment of the free exercise of his religion are intertwined and dependent on each other, dismissal of the claim regarding his removal from the Kosher meal program for his possession of a non-Kosher food item is inappropriate. Contrary to Plaintiff's argument, each of his claims are independent and stand on their own merit. Although both claims are based upon First

Amendment violations involving his removal from his Kosher diet, one is for an alleged retaliation for the use of the grievance system and one is an alleged violation of his religious rights based upon the application of an unconstitutional "zero-tolerance" policy.

A party may move for judgment on the pleadings after the pleadings are closed, as long as the motion will not delay trial. Fed. R. Civ. P. 12(c). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* Defendants argue that they are entitled to the qualified immunity defense because the MDOC's "zero-tolerance" policy, providing that an inmate may be removed from the Kosher meal plan if he is in possession of a non-kosher item, was not definitely held in violation of the Constitution at the time Plaintiff was removed from his Kosher diet. Defendants argue that qualified immunity is appropriate because the law was not clearly established that the MDOC's "zero tolerance" policy violated the free exercise of religion.

On October 5, 2010, Plaintiff was interviewed by Defendant Swajanen on a Notice of Intent to remove him from the Kosher meal program because Plaintiff had purchased non-Kosher food from the prison store. Plaintiff claims that he was unaware that the items were non-Kosher. Following an administrative hearing on October 15, 2010, Defendant Konrad removed Plaintiff from the Kosher meal program.

On May 13, 2010, prior to Plaintiff's removal from the Kosher meal program, the Sixth Circuit issued an opinion in *Colvin v. Caruso*, 605 F.3d 282 (2010), questioning the constitutional validity of the MDOC's policy that provided that an inmate could be removed from the Kosher meal program for possession of a non-Kosher food item. The Sixth Circuit explained:

> Turning first to Colvin's wrongful-removal claim, we note that MDOC's policy of removing a prisoner from the kosher-meal program for mere possession of a nonkosher food item may be overly restrictive of inmates' religious rights. Colvin was removed from the program pursuant to this policy after LMF officials discovered nonkosher protein powder in his cell. Recently, a federal district court in New Hampshire considered the constitutionality of a prison's "zero tolerance" policy of suspending a prisoner from the kosher-meal program for six months if the prisoner consumed or possessed food in violation of the diet. *Kuperman v. Warden, N.H. State Prison,* Civil No. 06-cv-420-JL, 2009 WL 4042760, at *6 (D.N.H. Nov. 20, 2009). Surveying recent case law on this issue, the court remarked that
>
>> [a] circuit split is brewing.... The Fourth Circuit Court of Appeals recently held that a prison violated RLUIPA when it prevented a prisoner from participating in Ramadan meals and group prayers after catching him breaking his Ramadan fast. *See Lovelace v. Lee,* 472 F.3d 174 (4th Cir.2006). In an earlier case, however, the Eighth Circuit Court of Appeals reached the opposite conclusion,*297 upholding such a policy because "[r]ather than burdening Ramadan worshippers, the ... policy allows full participation in the fast and removes from the procedures only those worshippers who choose to break the fast." *Brown-El v. Harris,* 26 F.3d 68, 69-70 (8th Cir.1994). The *Lovelace* court distinguished

> *Brown-El* because it applied a First Amendment analysis, whereas *Lovelace* applied the "more rigorous" RLUIPA analysis. *Lovelace,* 472 F.3d at 188 n. 3. But a dissenting judge saw no material distinction and argued for the result in *Brown-El. See id.* at 208 (Wilkinson, C.J., concurring in the judgment in part and dissenting in part).
>
> In a case even closer to this one, the Seventh Circuit Court of Appeals recently applied the heightened statutory standard and nevertheless concluded that suspension of kosher diet privileges in response to dietary violations is not a substantial burden on religious exercise because it does not "compel conduct contrary to religious beliefs: [the prisoner] was forced to eat the non-kosher meals only because he turned down the kosher ones." *Daly v. Davis,* No. 08-2046, 2009 WL 773880 (7th Cir.2009) (unpublished). This holding also appears to be in tension with *Lovelace.*
>
> *Id.* (alterations in original) (footnote omitted). Without further factual development on this issue, we cannot definitively conclude that LMF's strict application of its kosher-meal policies to Colvin was constitutional.

*Id.* at 296-297.

After remand, Judge Edgar issued an opinion on February 9, 2012, for the first time expressly finding that the MDOC's policy allowing for removal from the Kosher meal program simply because an inmate possessed a non-Kosher meal item was not constitutional. *Colvin v. Caruso,* 852 F. Supp. 2d. 863, 868 (2012). Judge Edgar, however, granted the defendants qualified immunity on this issue, explaining:

> However, defendants Keith Castello and Greg Exelby are both entitled to qualified immunity. As the Court of Appeals said in this case, a qualified immunity determination involves a two pronged inquiry: (1) whether a constitutional right has been violated, and (2) whether that right was clearly established. *Colvin v. Caruso,* 605 F.3d at 290. In applying this test, this Court can consider whether Exelby and Castello would have reasonably believed that their actions

> were not in violation of Colvin's constitutional rights. *Id.* Exelby merely conducted a search of Colvin's cell, and Castello merely followed the regulation. In the summer of 2007 there had not been any determination that the regulation was in any way deficient. Castello would not have had any reason to believe that complying with the regulation would be in contravention of Colvin's constitutional rights.

*Id.*

In this case, as in *Colvin*, Defendants relied upon on the Policy Directive that allowed them to remove Plaintiff from the Kosher meal program. Accordingly, it is recommended that the court dismiss Plaintiff's First Amendment claim that he was wrongfully removed from the Kosher meal program based upon the MDOC regulation relied upon by Defendants. In 2010, at the time of Plaintiff's removal, the MDOC policy was not considered definitively in violation of the Constitution. It is recommended that Defendants be granted qualified immunity on this issue.

Accordingly, it is recommended that the court grant Defendants' Motion for Judgment on the Pleadings (Docket #47) and dismiss Plaintiff's First Amendment free exercise claim involving his removal from the Kosher Meal Program. Plaintiff's retaliation claim should proceed to trial.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 6, 2014